**FILED**

MAR 2 7 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **19MJ1255**
One (1) Black Motorola Moto E5 Plus Cellular Phone; )
Model: XT1924-5 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A incorporated herein by reference

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Conspiracy to Import Controlled Substances |

The application is based on these facts:
See Attached Affidavit of Special Agent Mauricio Duran incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mauricio Duran, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/27/19

_____
*Judge's signature*

City and state: San Diego, Califonria    Hon. Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*


# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>Black Motorola Moto E5 Plus Cellular Phone;<br>Model: XT1924-5 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, Mauricio Duran, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been being duly sworn, hereby state as follows:

## INTRODUCTION

1.  This affidavit supports an application for a warrant to search the following electronic devices, hereafter referred to as the **Target Device**:

    a.  Black Motorola Moto E5 Plus Cellular Phone
        Model: XT1924-5
        IMEI: Unknown

as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960 – Importation of Controlled Substances. This search supports an investigation and prosecution of Sara ESTRADA-Martinez for the crimes mentioned above. A factual explanation supporting probable cause follows.

2.  The **Target Device** was seized on February 20, 2019, at the San Ysidro Port of Entry in San Diego, CA. The **Target Device** was seized from ESTRADA-Martinez pursuant to her arrest for alleged violations of Title 21, United States Code, Section(s) 952 and 960 – Importation of Controlled Substances. The **Target Device** is currently stored at Homeland Security Investigations, San Ysidro Evidence Room, 2255 Niels Bohr Ct., San Diego, CA 92154.

1

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## **EXPERIENCE AND TRAINING**

5. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), who is assigned to the San Ysidro office under the Special Agent in Charge in the San Diego office. I have been employed by HSI since 2017. As part of my daily duties as an HSI agent, I investigate criminal violations relating narcotics smuggling. I have received training from the Federal Law Enforcement Training Center at Glynco, Georgia and Artesia, New Mexico in the area of narcotics smuggling. I have participated in numerous narcotics smuggling investigations. I am in routine contact with experts in the field of narcotics smuggling investigations. As a federal agent, I am authorized to investigate violations of United States laws and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. In preparation for this affidavit, I have discussed the facts of this case with other law enforcement agents/officers within HSI and other agencies.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular

2

telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine, cocaine, and fentanyl. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular/mobile telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular/mobile telephones.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug smugglers and their co-conspirators often use cellular/mobile

3

telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.    The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones yields evidence:

    a.    tending to identify attempts to import cocaine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

4

    c.      tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    d.      tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.      tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

    f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## **FACTS SUPPORTING PROBABLE CAUSE**

### A. DEFENDANT'S ARREST

10. On February 20, 2019, at approximately 11:20 a.m., Sara ESTRADA-Martinez, utilized a United States Border Crossing Card to apply for permission to enter into the United States from Mexico through the San Ysidro, California, Port of Entry. ESTRADA-Martinez was the driver, sole occupant, and registered owner of a 2010 Nissan Versa bearing Mexico license plate A33NUM6 ("the vehicle").

11. Customs and Border Protection Officer ("CBPO") J. Davis conducted the primary inspection of ESTRADA-Martinez. ESTRADA-Martinez gave a negative customs declaration. CBPO Davis asked ESTRADA-Martinez where she was going, and ESTRADA-Martinez stated Plaza Las Americas in San Ysidro, California. CBPO Davis then received a computer-generated alert and advised ESTRADA-Martinez to go to the Secondary Inspection. CBPO Davis asked ESTRADA-Martinez who was the owner of the vehicle, for which ESTRADA-Martinez stated she was, and provided CBPO Davis with a copy of the vehicle registration.

12. On February 20, 2019, at approximately 11:30 a.m., CBPO O. Perez utilized a Human and Narcotics Detection Dog, Astra, to screen the vehicle. Astra alerted to the rear driver side seat of the vehicle.

13. On February 20, 2019, at approximately 12:00 p.m., CBPO Larry Park took custody of the vehicle and drove it to the Seizure Control Center. At approximately 12:30 p.m., CBPO Park removed 12 packages from the front and rear seats of the vehicle. The packages tested positive for cocaine and weighed 14.58 kilograms.

14. At approximately 12:48 p.m., ESTRADA-Martinez was arrested for transporting narcotics into the United States. At the time of her arrest, ESTRADA-Martinez had **Target Device** in her possession. **Target Device** was found inside ESTRADA-Martinez's bag along with a GPS device and her other personal effects. The **Target Device** was seized and has been stored in a secure location.

**B.    DEFENDANT'S POST-<u>MIRANDA</u> STATEMENT**

15. On February 20, 2019, at approximately 2:23 p.m., HIS Special Agents Mauricio Duran and Robert Rospiglosi interviewed ESTRADA-Martinez. ESTRADA-Martinez waived her <u>Miranda</u> rights and spoke with agents.

16. During the interviews, ESTRADA-Martinez denied knowledge of controlled substances concealed within her vehicle and claimed she was being paid $2,000 USD to smuggle United States currency into Mexico.

17. ESTRADA-Martinez stated she replied to an online job posting in Mexico looking for drivers with visas who could enter the United States from Mexico. Then, a man named Jaime Valdez contacted her via cellphone and explained the job involved transporting United States currency from the United States into Mexico. ESTRADA-Martinez admitted her trip on February 20, 2019, was her third time transporting money for Valdez.

18. ESTRADA-Martinez stated that Valdez would give her directions via Whatsapp to shopping centers in the United States. She would then leave her vehicle with an unknown woman and ESTRADA-Martinez would shop or eat. After some time, the unknown woman would return with ESTRADA-Martinez's vehicle with money and a GPS tracking device concealed somewhere in the vehicle. ESTRADA-Martinez would then drive the vehicle back to Mexico to a destination Valdez would provide. At

the destination in Mexico, ESTRADA-Martinez would leave her vehicle with another unknown person to recover the money.

19. ESTRADA-Martinez was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance, and booked into the Metropolitan Correctional Center.

20. Based on my training and experience, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information may be stored in the memory of the **Target Device**, which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ESTRADA-Martinez, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**.

21. Drug conspiracies require detailed and intricate planning to successfully evade detection. In my training, education and experience, I have learned that the planning and coordination of a drug conspiracy requires planning and coordination in the days, weeks, and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject via their cellular phone after the arrest to determine the whereabouts of their valuable cargo. Given this, I request permission to search the **Target Device** for evidence dating back to November 20, 2018, up to and including through February 20, 2019.

## **METHODOLOGY**

22. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which

7

the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that ESTRADA-Martinez used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

26. Because the **Target Device** was promptly seized during the investigation of ESTRADA-Martinez's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by ESTRADA-Martinez continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from November 20, 2018, up to and including through February 20, 2019.

21. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Mauricio Duran
Special Agent

Subscribed and sworn to before me this ___27___ day of March, 2019.

_____
HON. BERNARD G. SKOMAL
United States Magistrate Judge

9

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black Motorola Moto E5 Plus Cellular Phone
     Model: XT1924-5
    **(Target Device)**

The **Target Device** is currently stored at the Homeland Security Investigations San Ysidro Evidence Room, 2255 Niels Bohr Ct., San Diego, CA 92154.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of November 20, 2018 to February 20, 2019.

a.  tending to identify attempts to import cocaine or some other federally controlled substance from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Section 952, and 960.